**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SUSAN MARIE HOLT, | ) | CASE NO. 1:23-CV-00209-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE   BRIDGET   MEEHAN |
| | ) | BRENNAN |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Susan Marie Holt ("Holt" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On March 31, 2021, Claimant filed an application for SSI. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  On July 5, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 7, PageID #: 57, Tr. at 31). On August 15, 2022, the ALJ issued a written decision finding Claimant was not disabled.  (*Id.*, PageID #: 38, Tr. at 12).  The ALJ's decision became final on December 5, 2022, when the Appeals Council declined further review.  (*Id.*, PageID #: 27, Tr. at 1).

On February 3, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 8, 11, 12). Claimant asserts the following assignments of error:

1.  The ALJ erred when she failed to evaluate the opinion of the treating source in accordance with 20 CFR 416.920c.

2.  The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Rulings 96-8p and consider all of Plaintiff's impairments when forming her RFC.

3.  The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of all Plaintiff's symptoms precluded her from performing substantial gainful activity on a full-time and sustained basis.

(ECF No. 8 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the Claimant's symptom testimony:

> In written statements, the claimant alleged disability due to anxiety, depression, emotional, and bipolar (Exhibit 2E). The claimant reported she has been homeless since March 7, 2021 when her boyfriend was diagnosed with dementia and he moved in with his family (Exhibit 5E).
>
> At the July 5, 2022 hearing, the claimant testified that she does not drive. She testified she has taken some college courses, but she does not have a degree. She testified she does not smoke, but she does drink some. She testified that she does not use illegal substances. She testified she makes sandwiches, coffee, cereal, and she washes the dishes. She testified that she has someone wash her laundry. She testified she goes shopping for her personal items. She testified she helps [take] care of the cat. She testified she walks or takes the bus to the grocery store. She testified that she runs errands, and she sometimes goes out to eat. She testified she is able to text, use a tablet, check her emails, go on Facebook and play games. She testified she is not able to work because of her depression. She testified she has been seeing a psychiatrist. She

testified she is currently taking Cymbalta. She testified she gets sick a lot and she has IBS and constipation. She testified she throws up. She testified that sometimes she has problems being around large groups of people. She testified she did not have problems remembering things. She testified she is able to focus and concentrate while watching a 2-hour movie. She testified she has problems being around other people. She testified she has crying spells and her feelings are easily hurt. She testified that when she lived at the shelter, she had panic and anxiety attacks.

(*Id.*, PageID #: 46-47, Tr. at 20-21)

## B. Relevant Medical Evidence

The ALJ also summarized Claimant's record evidence:

School records from Parma City Schools reflects the claimant had a full-scale IQ of 80 at age 11 (Exhibit 1F). At age 13, she had a full-scale IQ of 65 due to her remaining silent in response to all tasks requiring verbal reasoning unless constantly encouraged.

Records from Ohio Guidestone reflect on June 24, 2021 that the claimant was living at Laura's Home (Exhibit 6F). She stated that she was taking better care of herself since being at Laura's Home. She daydreams a lot and her energy is OK. She presented with a full affect appropriate to content and clear speech. She did need some re-direction as she tended to wander off-topic. Insight and judgment were fair and poor. She cried easily, was somewhat withdrawn, felt overwhelmed, had difficulty making decisions, and she felt sad. The claimant reported on July 21, 2021 that she suffers from a variety of mental health symptoms, but she denied receiving a diagnosis. She does not feel safe at Laura's Home because of the noise of others living in close proximity. On August 4, 2021, the claimant stated that she was very miserable at Laura's Home and she had a really hard time with various dramas playing out around her. She displayed frequent short times of distraction, but she was able to redirect herself. It was noted on August 11, 2021 that the claimant was timidly engaged. After a couple of days of staying with friends, she is staying with her sister, but her nephew has violent outbursts, which she has great difficulty with. On August 18, 2021, the claimant was open and engaged. She did not feel safe with her living situation with her sister and nephew. She talks with her fiancé Ron and she visits with him when possible, but his children do not want her to see him or to stay with him. His children stated that the neurologist does not want the claimant to stay with Ron and that it should only be immediate

family. The claimant was diagnosed with MDD and GAD. On September 28, 2021, the agency discharged the claimant due to the switch of her providers for psychiatric services.

Records from Florence Kimbo, M.D., & Associates reflects on August 23, 2021 that the claimant was well oriented in all spheres (Exhibit 8F). She appears drowsy. Her affect is constricted and her mood is depressed. She maintained good eye contact. Her speech was hesitant. Recent and remote memory is normal. Psychomotor activity can be characterized by fidgetiness. There were no significant preoccupations with thought content. She denied hallucinations. She was open and cooperative. She had good judgment, but she verbalized partial awareness of her problems. She was distractible. She was able to resist urges. She had moderate anxiety. On September 7, 2021, the claimant reported crying spells 2-3 times a week. She denied feelings of hopelessness and anhedonia. She had anxiety due to living with her sister and her verbally abusive nephew. She loosely endorses agoraphobia and social phobia. She denied suicidal ideations. She had difficulty sleeping. She denied mania, impulsivity, excess energy, mood swings, and grandiosity. She reported a history of nightmares and flashbacks after her uncle molested her. It was noted on October 5, 2021 that the claimant was doing better since the medication changes were implemented. She reported diarrhea the first couple of days which has abated and she denied any other side effects. She was currently staying with a cousin in Westlake. Her mood was better but she remained upset that she cannot stay with her fiancé. Her anxiety was better but she was still worried about where she would eventually reside. She was sleeping better. She denied suicidal ideations, hallucinations, paranoia, and delusions. On October 21, 2021, the claimant reported that she was homeless but she was staying with her cousin. The claimant was diagnosed with MDD, recurrent, moderate, insomnia, bradycardia, GAD, social phobia, PTSD, and homelessness.

(ECF No. 7, PageID #: 47-48, Tr. at 21-22).

## C.  Opinion Evidence at Issue

The ALJ summarized the opinion from Certified Nurse Practitioner Anthony Shumway as follows:

Anthony Shumway, CNP, submitted a medical opinion on July 15, 2022 (Exhibit 10F). Nurse Shumway opined the claimant was unable to meet competitive standards for accepting instructions and

4

responding appropriately to criticism from supervisors. Otherwise, her abilities were either seriously limited but not precluded, or limited but satisfactory. She is unlimited or very good with carrying out short, simple instructions, understanding and remembering short, simple instructions, asking simple questions or requesting assistance, and being aware of normal hazards and taking precautions. Nurse Shumway further opined the claimant would be absent from work one to two times per week due to combination of psychiatric symptoms and GI symptoms. The claimant would be off task more than 10% of the day. These responses were obtained from interviewing the claimant. Nurse Shumway noted the claimant was poorly focused, slow to process, very reserved, bashful and lacks self-esteem.

(ECF No. 7, PageID #: 49, Tr. at 23).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has the following severe impairments: major depressive disorder (MDD), generalized anxiety disorder (GAD), avoidant personality disorder, and social phobia (20 CFR 416.920(c)).

[ ]

The claimant also has the following nonsevere impairments: cholelithiasis, lymphadenitis, headache disorder, and gastroesophageal reflux disease (GERD) (Exhibits 2F, 5F, and 9F).

[ ]

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple routine tasks with simple short instructions. She can make simple decisions. There can be occasional workplace changes. She must avoid strict production rate or hourly quotas. She can have occasional interaction with coworkers, supervisors, and the public.

[ ]

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

[ ]

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 10, 2021, the date the application was filed (20 CFR 416.920(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-

insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

### 1. Substantial evidence supports the ALJ's assessment of the medical opinions.

For claims filed on or after March 27, 2017, such as here, medical opinions are evaluated under 20 C.F.R. § 416.920c. The ALJ must articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b). The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, is not bound by the "treating physician rule," and is not required to give a treating source controlling weight. *Id.* at § 416.920c(a); *see also Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two

"most important factors" of supportability and consistency. 20 C.F.R. § 416.920c(b); *see also Hamade v. Kijakazi*, No. 21-2973, 2022 WL 4487896, at *3 (6th Cir. 2022) ("For claims filed after March 27, 2017, the Commissioner does not give specific evidentiary weight, including controlling weight, to any medical opinions" but instead "assesses medical opinions in light of relevant factors, including the consistency with other evidence in the record, and the length, frequency, and extent of the treatment relationship.") (quotation omitted). An ALJ must explain how they considered the factors of supportability and consistency, and "may, but [is] not required to" explain how they considered the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. *See* 20 C.F.R. §§ 416.920c(b)(2)-(3).

Holt asserts that substantial evidence does not support the ALJ's finding that the opinion provided by Certified Nurse Practitioner Anthony Shumway was not persuasive. Nurse Shumway began treating Holt in September 2021. (ECF No. 7, PageID 507, Tr. at 481). On July 15, 2022, he completed a mental impairment questionnaire concerning Holt's impairments. (*Id.*, PageID #: 507-508, Ex. 10F). With respect to Holt's limitations in concentration and persistence, Nurse Shumway opined that she was seriously limited but not precluded in her ability to manage regular attendance and be punctual with customary tolerances, work in coordination with or in proximity to others without being distracted, and complete a normal workday and workweek without interruptions from psychologically based symptoms; for all remaining areas she was limited but satisfactory or unlimited. With respect to her understanding and memory limitations, Nurse Shumway opined that Holt was seriously limited but not precluded in her ability to remember locations and work-like procedures, and to understand and remember detailed instructions, but she was unlimited in her ability to understand and remember very short and

simple instructions. Nurse Shumway opined that Holt was unable to meet competitive standards in her ability to accept instructions and respond appropriately to criticism from supervisors and seriously limited but not precluded in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. Nurse Shumway opined that Holt would be absent one to two times a week due to a combination of her psychiatric and GI issues. Finally, Nurse Shumway opined that Holt would be absent more than ten percent of each day due to her mental impairments.

Here, the ALJ adequately explained how they considered the supportability and consistency of Nurse Shumway's opinion. The ALJ found this opinion partially persuasive and explained that it was not "fully consistent with the evidence of record." (*Id.*, PageID #: 49, Tr. at 23). The ALJ further explained:

> Claimant's school records note her withdrawn behavior and limited verbal communication. However, she functions in the average range of intelligence verbally and low average range on non-verbal skills (Exhibit 1F, pp. 2-4). It appears from the record, the last time Nurse Shumway saw the claimant was in October 2021, almost a year prior to his opinion. At that time, she was noted to be in excellent health. She reported doing better since medication changes. Her mood was better, rated as 0-1/10, but she was upset that she could not stay with her fiancé. Her anxiety was better and she denied panic attacks. She was sleeping better after taking melatonin (Exhibit 8F, pp. 23-24). Mental status exam noted that she appeared alert, affect euthymic, clam, full range, appropriate and mood congruent. She presented in an appropriate fashion with good eye contact, soft spoken speech. Recent and remote memory appeared normal. There was no degree of conceptual disorganization evident. Her thought content was preoccupied with facing homelessness and her social security appeal but she felt better than her last visit. She denied hallucinations, paranoia, delusions. Her attitude was open and cooperative. She verbalized partial awareness of problems. Her judgment was fair/average. Attention/concentration was fair (Id. at 27). This is inconsistent with Nurse Shumway's opinion on absenteeism and off task behavior.

(*Id*., PageID #: 49-50, Tr. at 23-24).

Holt argues this is insufficient because the ALJ incorrectly stated that Nurse Shumway had last seen Holt in October 2021, almost a year before his opinion dated July 2022. (ECF No. 8 at 8). Holt asserts that she continued to treat with Nurse Shumway through the date of her hearing. (ECF No. 8 at 9 (citing Tr. at 40-41)). In support of this statement, Holt cites to her own testimony and the note on Nurse Shumway's evaluation stating that they had "[one] visit every 1-2 [months] since treatment began [in] Sept[ember] 2021[.]" (ECF No. 7, PageID #: 507, Tr. at 481). However, Holt does not cite to any medical records supporting her assertion that she continued to treat with Nurse Shumway after October 2021, nor does the record include any. Even if Holt continued to treat with Nurse Shumway after October 2021 as she asserts, there is no further objective evidence or explanation in the record to support Nurse Shumway's opinion. Accordingly, Holt failed to show that the ALJ erred by finding that Nurse Shumway's opinion was not supported by the evidence in the record. *See* 20 C.F.R. §416.920c(c)(1) (Supportiveness is measured by the extent of objective evidence and explanation the doctor provides.).

Here, the ALJ explained that Nurse Shumway's opinion was not supported by objective medical evidence. (*See* ECF No. 7, PageID #: 49-50, Tr. at 23-24 (discussing the medical records of Holt's visits with Nurse Shumway)). Additionally, the ALJ explained how Nurse Shumway's opinion was not consistent with the other evidence in the record. (*Id*. (discussing how the school records are inconsistent with Nurse Shumway's opinion as to Holt's absenteeism)). Holt cites to other evidence in the record to challenge the ALJ's finding that Nurse Shumway's opinion was not consistent with the evidence in the record. Specifically, Holt asserts that she had "a history of severe depression, cried easily, was somewhat withdrawn, felt overwhelmed, had difficulty making decisions, and felt sad." (ECF No. 8 at 9 (citing Tr. at 360)). Additionally, Holt cites to

10

records where she was observed as having "a constricted affect with a depressed mood and presented in a bizarre fashion," and were her "attention and concentration were characterized by distractibility." (*Id.* (citing Tr. at 412). Claimant's argument merely highlights that there may be substantial evidence to support an alternative conclusion. "But the Court does not reweigh evidence when reviewing an ALJ's determination." *McQuade v. Comm'r of Soc. Sec.*, No. 1:21CV834, 2022 WL 4375984, at *2 (N.D. Ohio Sept. 22, 2022); *Avers v. Kijakazi*, No. 3:20-CV-01433, 2021 WL 4291228, at *5 (N.D. Ohio Sept. 21, 2021) ("the court does not review the evidence de novo, make credibility determinations, or weigh the evidence (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989))). In conclusion, the ALJ sufficiently explained their analysis of the medical opinion in compliance with 20 C.F.R. § 416.920c.

Next, Holt takes issue with the ALJ's decision not to limit her to superficial interaction with others despite the observations and opinions of consultative examiner Dr. Deborah Koricke and the State agency reviewing psychologists. (ECF No. 8 at 10). Holt cites to portions of the opinion of consultative examiner Dr. Deborah Koricke where it was noted that Holt had difficulty performing serial 7s and she exhibited avoidance of interaction with others. (ECF No. 8 at 9 (citing Tr. at 328-29)). Holt also cites to State Agency reviewing psychologists' remarks that she struggled to stay on topic and had to have questions repeated several times and that she was limited to 1 to 3 tasks with brief superficial interaction with coworkers and supervisors. (*Id.* at 9-10 (citing Tr. 64, 73)). Holt argues that the ALJ failed to adequately explain why, despite these observations and opinions, they limited her to occasional interaction with coworkers, supervisors, and the public but failed to include a limitation to superficial interaction. (*Id.* at 10

(citing Tr. at 20)).[1]

Substantial evidence supports the ALJ's decision not to include a limitation to superficial interaction in the RFC. Dr. Koricke, whom Holt cites to in her brief, specifically stated that Holt was "pleasant and cooperative, and although she is shy, she has never had any issues in her limited work career in responding appropriately to supervisors or coworkers in a work setting." (ECF No. 7, PageID #: 356-57, Tr. at 330-31). Despite Dr. Koricke's observations cited by the Claimant, Dr. Koricke did not include limitations in Holt's ability to respond appropriately to supervision or to coworkers in a work setting. (*Id.*). Medical expert opinions are substantial evidence on which the ALJ may rely. *See Hoskins v. Comm'r of Soc. Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence."). Holt does not challenge the ALJ's decision finding persuasive Dr. Koricke's opinion. Accordingly, substantial evidence supports the ALJ's decision not to include a limitation to superficial interaction in the RFC.

Although the State agency consultants stated that Holt was only capable of superficial interactions with the general public and should not handle conflict resolutions (ECF No. 7, PageID #: 90, Tr. at 64), the ALJ explained that the consultant's "did not define 'superficial' interaction, and unskilled work does not involve conflict resolution, which is a skill, so it is unnecessary to add this limitation." (*Id.*, PageID #: 49, Tr. at 23). Claimant overlooks the ALJ's

---

[1] Holt cites to noted issues with her ability to perform serial 7s and task limitation but does not explain her argument or issue further. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)). Accordingly, any issue regarding these observation or limitations is waived.

explanation entirely. The ALJ explained their consideration of the consultants' opinions, found them "mostly persuasive" and included the limitations that were supported by the record. This is sufficient. *See Daniels v. Comm'r of Soc. Sec.*, No. 3:19-CV-02946, 2020 WL 6913490, at *10 (N.D. Ohio Nov. 24, 2020); *see also Hogan v. Comm'r of Soc. Sec.*, No. 1:20-cv-01311, 2021 WL 4477786, at *4 (N.D. Ohio, September 30, 2021) ("there is no requirement that, once finding an opinion persuasive, the ALJ must adopt the whole opinion.").

The ALJ's decision was not outside of the permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). *See also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."). Accordingly, substantial evidence supports the RFC.

### 2. The ALJ did not err in applying SSR 96-8p.

In her second issue, Holt asserts that the ALJ failed to consider her non-severe impairments when forming the RFC.[2] (ECF No. 8 at 12 ("The ALJ, however, failed to consider any of these impairments when forming her RFC and found that Plaintiff could perform a full range of work at all exertional levels (Tr. 20).")).

At Step-Two, the ALJ found the following severe impairments: major depressive disorder (MDD), generalized anxiety disorder (GAD), avoidant personality disorder, and social phobia,

---

[2] The Commissioner frames the issue as a Step-Two matter – that the ALJ improperly determined the impairments as non-severe instead of severe. (*See* ECF No. 11 at 5 and ECF No. 12 at 1).

and the following non-severe impairments: cholelithiasis, lymphadenitis, headache disorder, and gastroesophageal reflux disease (GERD). (ECF No. 7, PageID #: 43, Tr. at 17 (citing Exhibits 2F, 5F, and 9F)). The ALJ further found that Holt's irritable bowel syndrome was not a medically determinable impairment. (*Id*). Holt does not challenge the ALJ's Step-Two determination.

When determining the RFC, the ALJ must: "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5: *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e) (noting that the Commissioner will consider all of a claimant's medically determinable impairments, even if they are not severe). The policy statement further explains that "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id*.

The Sixth Circuit explained the requirements of SSR 96-8p in *Emard v. Comm'r of Soc. Sec*., 953 F.3d 844, 852 (6th Cir. 2020). Upholding the Commissioner's decision denying disability benefits, the Sixth Circuit emphasized that the ALJ conducted a detailed analysis of the claimant's non-severe impairments at Step Two. *Emard*, 953 F.3d at 848–49. And "[a]lthough the ALJ did not specifically discuss the combined effect of [the claimant's] impairments or mention [the claimant's] nonsevere impairments in assessing his residual functional capacity, [the ALJ] stated that she had carefully considered the entire record and 'all symptoms' at this step in the process." *Id*. at 851. Further, the court in *Emard* highlighted that "[d]istrict courts in this circuit have held an ALJ need not specifically discuss all nonsevere impairments in the [RFC] assessment *when the ALJ makes clear that her decision is controlled by SSR 96-8p*." *Id*. at

851–52 (emphasis added). As a result, the Sixth Circuit held that the ALJ's "express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis," plus her subsequent assurance that she had "considered the entire record and 'all symptoms,' " provided a sufficient basis to conclude that the ALJ properly considered all of the plaintiff's impairments when crafting the RFC. *Id*.

The identified factors from *Emard* are also present in the ALJ's decision in this case. In their summary of the law, the ALJ explained that prior to Step Four an ALJ must determine the individual's RFC by "consider[ing] all of the claimant's impairments, including impairments that are not severe[.]" (ECF No. 7, PageID #: 43, Tr. at 17 (citing 20 CFR 416.920(e) and 416.945; SSR 96-8p)). As in *Emard*, the ALJ here expressly "discuss[ed] [ ] the functional limitations imposed by [Plaintiff's] nonsevere impairments at step two of her analysis[:]"

> Computed tomography (CT) of the abdomen and pelvis showed cholelithiasis (Exhibit 2F, p. 67. On October 29, 2020 she complained of occasional right sided abdominal pain and occasional tension headaches (Exhibit 2F, p. 14). The claimant was seen in the emergency room with a complaint of abdominal pain after eating a Thanksgiving meal (Exhibit 2F, p. 7). The claimant was given Zofran for nausea. CT of the neck on January 4, 2022 showed retropharyngeal edema and multilevel right-sided cervical lymphadenopathy with ill-defined surrounding soft tissue stranding and swelling throughout the right neck (Exhibit 9F, p. 18). Findings may reflect a lymphadenitis without evidence of suppurative change or abscess formation at this time, although the appearance is nonspecific and close follow-up should be considered. The record supports a finding that these impairments are non-severe impairments *because they do not impose more than minimal limitations in her ability to perform basic work activities.*

(*Id*., PageID #: 44, Tr. at 18 (emphasis added)). In this analysis, the ALJ pointed to Holt's cholelithiasis, abdominal pain, headaches, lymphadenitis, IBS, and nausea and cited to medical records showing that Holt's complaints had largely subsided by the time she obtained medical treatment. (*See id*., Tr. at 228, 241, 253-4, 258). The ALJ explained that the non-severe

impairments did not impose additional limitations in Holt's functional abilities. (*Id.*). The ALJ also specifically stated that they considered all of Holt's impairments, including those determined to be non-severe, in assessing her RFC. (*Id.* ("The undersigned considered all the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.")). At the start of the RFC analysis, the ALJ again stated that they "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence [.]" (*Id.*, PageID #: 46, Tr. at 20). It is well established in this Circuit that "an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p." *Emard*, 953 F.3d at 851-52. The ALJ did so here.

Moreover, Holt does not assert any functional limitations caused by her impairments. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]"); *Helwagen v. Comm'r of Soc. Sec.*, No. 5:22-CV-01467, 2023 WL 3727253, at *17 (N.D. Ohio Apr. 20, 2023) (noting that where claimant "presented no arguments in support of how or why these non-severe impairments should have altered the ALJ's RFC", substantial evidence supports the ALJ's determination that the impairments did not support a finding of disabled), *report and recommendation adopted*, No. 5:22CV1467, 2023 WL 3726575 (N.D. Ohio May 30, 2023); *and see Emard*, 953 F.3d at 851 (noting that claimant asserted that his chronic diarrhea combined with his back pain and abdominal pain interfered substantially with work related functions); *see also Langley v. Comm'r of Soc. Sec. Admin.*, No. 1:19 CV 2803, 2021 WL 1185474 (N.D. Ohio Mar. 30, 2021) (remanding where ALJ failed to consider specific limitation requiring an oxygen

tank in relation to claimant's non-severe impairment of migraine headaches); *Buzzo v. Saul*, No. 2:19-CV-198-HBG, 2021 WL 932020, at *7 (E.D. Tenn. Mar. 11, 2021) (remanding where the ALJ failed to reference SSR 96-8p and failed to make any findings regarding potential functional limitations stemming from claimant's migraines despite claimant's testimony and factual support that she was unable to work due to disabling symptoms stemming from her migraines.); *but see Thoenen v. Comm'r of Soc. Sec.*, No. 5:21-CV-1101, 2022 WL 3577414 (N.D. Ohio Aug. 19, 2022) (remanding where the ALJ failed to reference SSR 96-8p and did not reference one of claimant's non-severe impairments in the RFC analysis without mention of whether claimant asserted any functional limitation associated with that impairment). Here, Holt cites to emergency room treatment notes for various complaints, including neck pain, knee pain, a urinary tract infection, abdominal pain, headache, and cholelithiasis and claims that the ALJ failed to consider these impairments in the RFC. (ECF No. 8, at 11-12 (citing Tr. 228–32, 241–44, 252–54, 335–37, 337–42, 446–49)). The Court notes that Holt's list includes both medically determine impairments, symptoms of her impairments, and diagnoses. As explained above, SSR 96-8p requires that an ALJ consider all *limitations* caused by a person's impairments. SSR 96-8p ("in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). "[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.* Holt has not set forth any limitations caused by her non-severe impairments or symptoms, let alone any that were overlooked by the ALJ. (*See* ECF No. 8); *Jones*, 336 F.3d at 474 (The claimant has the burden to prove the existence and severity of limitations caused by her impairments). Accordingly, as there

17

are no reported functional limitations, no further explanation was required under SSR 96-8p. *Cf.* SSR 96-8p (regarding allegations of symptoms ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."); *and see Fackler v. Saul*, No. 3:20-CV-00790, 2021 WL 3493511, at *11 (N.D. Ohio July 16, 2021) ("A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment.") (*citing Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment)), *report and recommendation adopted sub nom. Fackler v. Comm'r of Soc. Sec.*, No. 3:20-CV-790, 2021 WL 3492129 (N.D. Ohio Aug. 9, 2021).

Here, the ALJ met the requirements of SSR 96-8p. Accordingly, Claimant's second issue is without merit.

### 3. The ALJ properly applied SSR 16-3p when analyzing Claimant's subjective complaints.

In her final issue for review, Holt asserts that the ALJ erred by not including a limitation in the RFC regarding her need for frequent redirection and that such a limitation was supported by her subjective complaints and her school record. (ECF No. 8 at 15). Holt argues that the ALJ failed to properly consider SSR 16-3p when analyzing her complaints of distractibility caused by her psychological impairments. (*Id*.).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on

18

the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id*. The ALJ need not analyze all seven factors but should show that they considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation adopted by* 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ summarized Claimant's subjective symptom testimony as follows:

> In written statements, the claimant alleged disability due to anxiety, depression, emotional, and bipolar (Exhibit 2E). The claimant reported she has been homeless since March 7, 2021 when her boyfriend was diagnosed with dementia and he moved in with his family (Exhibit 5E).
>
> At the July 5, 2022 hearing, the claimant testified that she does not drive. She testified she has taken some college courses, but she does not have a degree. She testified she does not smoke, but she does drink some. She testified that she does not use illegal substances. She testified she makes sandwiches, coffee, cereal, and she washes the dishes. She testified that she has someone wash her laundry. She testified she goes shopping for her personal items. She testified she helps [take] care of the cat. She testified she walks or takes the bus to the grocery store. She testified that she runs errands, and she sometimes goes out to eat. She testified she is able to text, use a tablet, check her emails, go on Facebook and play games. She testified she is not able to work because of her depression. She testified she has been seeing a psychiatrist. She testified she is currently taking Cymbalta. She testified she gets sick a lot and she has IBS and constipation. She testified she throws up. She testified that sometimes she has problems being around large groups of people. She testified she did not have problems remembering things. She testified she is able to focus and concentrate while watching a 2-hour movie. She testified she has problems being around other people. She testified she has crying spells and her feelings are easily hurt. She testified that when she lived at the shelter, she had panic and anxiety attacks.

(ECF No. 7, PageID #: 46, Tr. at 20). The ALJ then found that Claimant's statements regarding the severity of her impairments were not consistent with the evidence:

> The claimant's statements regarding her impairments and their impact on her ability to work are not entirely consistent with the evidence considering the reports of the objective evidence of record. While the claimant has impairments that can be expected to produce some discomfort and functional limitations, the objective evidence does not support her contentions regarding the severity, chronicity and/or frequency of her symptoms.

(*Id*. at 21). Thereafter, the ALJ specifically noted several medical records and expert opinions that supported their conclusion. The ALJ noted records from Ohio Guidestone from June 24,

20

2021 that reported Holt presented with a full affect appropriate to content and clear speech but needed some re-direction as she tended to wander off-topic. Records from August 4, 2021 noted that Holt displayed frequent short times of distraction, but she was able to redirect herself. (*Id.* citing Ex. 6F). On August 23, 2021, medical records reflect that Holt was "oriented in all spheres[.]" (*Id.* (citing Exhibit 8F)). The ALJ noted that Holt's memory was normal, and she was fidgety, open and cooperative. The record stated that Holt demonstrated no significant preoccupations with thought content, had good judgment, but she verbalized partial awareness of her problems. Holt's attention/concentration were characterized as "distractible". The ALJ noted that on October 5, 2021, Holt was doing better since the medication changes were implemented. (*Id.*, PageID #: 48, Tr. at 22).  Moreover, the ALJ noted that the opinion of Dr. Koricke, which the ALJ found persuasive, stated that Holt had "sufficient ability to be able to maintain attention and concentration. She also can maintain persistence and pace and she does this routinely in her daily life with household chores. She can perform both simple and multi-step tasks." (*Id.*). The ALJ noted that the State agency consultants opined that Holt "retains the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, interact briefly/superficially with coworkers/supervisors and adapt to changes/stressors associated with simple routine competitive work activities[.]" (*Id.*, PageID #: 49, Tr. at 23 (citing Ex. 2A and 4A)). Nurse Shumway opined that Holt was "unlimited or very good with carrying out short, simple instructions, understanding and remembering short, simple instructions, asking simple questions or requesting assistance[.]" (*Id.* (citing Ex. 10F)). Although Nurse Shumway opined that Holt would be off task more than 10% of the time, the ALJ did not find that opinion persuasive as it was inconsistent with his own progress notes. (*Id.* (citing Ex. 8F)). As explained

21

above, substantial evidence supports the ALJ's persuasiveness finding.

In summation the ALJ further explained their finding:

> The claimant's allegations are partially consistent with respect to the nature of her symptoms. However, her allegations that her symptoms are so severe that she cannot perform work at substantial gainful activity levels are not consistent in light of the evidence of record and activities consistent with the ability to perform a range of work. The claimant alleged disability due to anxiety, depression, emotional, and bipolar. Although the undersigned found the claimant to have severe impairments, they are not work preclusive. Evidence of record regarding the claimant's daily activities is consistent with a residual functional capacity for work. The claimant can prepare meals, take public transportation, shop, read, play games, spend time with others, live with others, watch TV, use the internet, handle self-care and personal hygiene, and care for pets. However, to the extent that she is self-limited, this does not in itself establish a medical or pathological basis for such restrictions, nor is the record consistent with her alleging an incapacity for all sustained work activity. There is no evidence that the claimant's use of prescribed medication is accompanied by side effects that would interfere significantly with her ability to perform work within the restrictions outlined in this decision. In summary, the evidence does not corroborate the claimant's allegations of symptoms attributed to her impairments to an extent that would preclude the performance of work with the restrictions stated above.

(*Id*., PageID #: 50, Tr. at 24). Here, the ALJ explained their finding that Holt's symptoms are inconsistent with the medical records and considered several of the factors set forth in SSR 16-3p: Holt's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; and Holt's lack of medication to treat her symptoms.[3]

---

[3] In addition to explaining their decision in the RFC analysis, the ALJ specifically addressed Claimant's difficulties in concentrating, persisting, or maintaining pace at Step Three: "The claimant contended that she has limitations in concentrating generally, focusing generally, and avoiding distractions. On the other hand, the claimant said that she is also able to prepare meals, watch TV, read, play games, and use the internet. Additionally, the record fails to show an inability to complete testing that assesses concentration and attention." (ECF No. 7, PageID #: 45, Tr. at 19).

Holt does not argue that the ALJ failed to consider evidence that would have changed the outcome. Instead, Holt argues that the ALJ's decision not to include limitations in the RFC regarding Holt's distractibility was not supported by substantial evidence. However, as discussed above, substantial evidence supports the ALJ's decision. *See Segers v. Comm'r of Soc. Sec.*, No. 5:16-CV-2017, 2017 WL 9478425, at *10 (N.D. Ohio June 19, 2017), *report and recommendation adopted sub nom. Segers v. Berryhill*, No. 5:16-CV-2017, 2017 WL 4129117 (N.D. Ohio Sept. 19, 2017). It appears that Holt wants this Court to reweigh the evidence. However, it is not the role of this Court "to reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). The ALJ's decision satisfies the Court that the ALJ considered all of the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: November 1, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).